## M'PHERSON'S ADMINISTRATORS *against* REES.

A release in consideration of present embarrassment, is, necessarily, on an implied condition in morals, that advantage be not taken of it, after the embarrassment has ceased. That which has been conceded to a debtor's necessities, may be justly and honestly retracted on the principle of failure of consideration, when he no longer has necessities to be relieved. All that is wanting to that end, is a legal means, which the creditor may conscionably use when it is put into his hands by the debtor himself: such as a subsequent promise to pay.

A. having released a debt of the estate of which he was executor; subsequently settled his administration account in the Orphans' Court, as did also B his co-executor. In consideration of some arrangement B charged himself with the debt thus released by A and the accounts were confirmed. *Held:* that the confirmation of the accounts by the Orphans' Court was a conclusive discharge of A from all liability to pay the debt released by him, and that there did not remain such a moral obligation on his part, as would be a sufficient consideration to support a subsequent promise to pay it. Such promise was without consideration, and there could, therefore, be no recovery upon it.

WRIT of error to the Court of Common Pleas of *Union* county. This was an action on the case brought by *George W. Rees* against the administrators of *John M'Pherson*, and the following were the facts:—In 1804 *Daniel Rees* died, having first made a will and appointed *John M'Pherson, Adam Crist* and *Catherine Rees* his executors, and gave them power to sell his real estate. In 1808 the executors sold the estate to *Mathias M'Pherson* the son of *John M'Pherson* one of the executors, and took a mortgage upon the land to secure the purchase money— £787, which was payable in annual instalments. The mortgage was recorded; and in 1814 *John M'Pherson*, upon the margin of the record, acknowledged full satisfaction, and released the land from its lien. At this time *Adam Crist* one of the executors was dead, and *John Snook* was one of his executors. Between *John Snook* and *Mathias M'Pherson*, the purchaser of the land, there were transactions, in consideration of which, *Snook* engaged that, as the executor of *Adam Crist*, he would account to *Daniel Rees'* estate for the purchase money of the land; and thus *John M'Pherson* was induced to enter satisfaction upon the record of the mortgage, without having received any part of the money. In 1816 *John M'Pherson* filed an administration account of the estate of *Daniel Rees;* in which he did not charge himself with any part of the purchase money of the land: the account was held under advisement. In 1817 *Snook* as executor of *Adam Crist* filed an administration account of his testator of the estate of *Daniel Rees;* in which he charged himself with the receipt from *Mathias M'Pherson* of the purchase money of the land. In the same year *Catherine Rees* filed her administration account also. To these

M'Pherson's Administrators *v.* Rees.

accounts exceptions were filed by *Robert Vanvalzah* the guardian of *George W. Rees* the plaintiff, and they were all referred to auditors, who in January, 1818, made a report: in September, 1818, the Orphans' Court made a decree, and directed the Clerk to draw up the accounts accordingly; which was done; and in June, 1819, the accounts were confirmed.   In the accounts as finally confirmed *Snook*, executor of *Adam Crist*, was charged with the purchase money of the land, and *John M'Pherson* and *Catherine Rees* were not. *Robert Vanvalzah* was sworn as a witness, and said, that he had a conversation with *John M'Pherson* in his life time, in which he stated that his son *Mathias* had imposed upon him, in procuring him to enter satisfaction on the mortgage; that he had done so under the belief, that *Mathias* had made an arrangement with *Snook* to pay the money; and if the money could not be recovered from *Snook*, the heirs of *Daniel Rees* should not lose it, but he *(John M'Pherson)* or his estate should pay it.   The witness also stated, that *John M'Pherson* made this declaration to him more than once.   This suit, then, was brought by *George W. Rees* the son and heir at law of *Daniel Rees* to recover the said purchase money from the estate of *John M' Pherson* deceased.

Upon the foregoing facts, the Court below instructed the jury that the plaintiff was entitled to recover, who found a verdict accordingly.

*Greenough* and *S. Hepburn*, for plaintiff in error.

The subject-matter of this action was the subject-matter of inquiry by the Orphans' Court, when they adjudicated and passed upon the administration accounts of the executors of *Daniel Rees:* it, then, having passed *in rem judicatam*, by a well known and admitted principle of the law, all obligation to further accountability was thereby discharged: and inasmuch as the defendant's intestate never received one dollar, as the consideration for entering satisfaction upon the mortgage; there was not left the slightest moral obligation to account to any one, for an act done in good faith.   If, then, there was neither a legal nor moral obligation to account for this money, the promise by *John M'Pherson* was *nudum pactum* and the plaintiffs can not recover.   That the decree of the Orphans' Court was conclusive, there were cited *Groff* v. *Groff*, 14 *Serg. & Rawle*, 181.   *M'Fadden* v. *Gettis*, 17 *Serg. & Rawle*, 336, ·*Bucher* v. *Bucher*, 1 *Rawle*, 357.   *App* v. *Driesbach*, 2 *Rawle*, 287.   That the promise was without consideration and ·therefore there could be no recovery, were cited, *Pease* v. *Alexander*, 7 *Johns.* 25.   *Thorne* v. *Deas*, 4 *Johns.* 84.   *Peake's Ev.* 297.

*Merrill* and *Lashells*, for defendant in error.

*M'Pherson* having entered satisfaction upon the mortgage, was

legally and therefore morally bound to account to the heirs of his testator for its amount; if an imposition was practised upon him by his own son, it was his own fault; and if any arrangement was made between him and *Snook*, at the time the accounts were settled, that *Snook* should pay the money, and he afterwards failed to pay it, certainly it left a strong moral obligation on *M'Pherson* to pay, which was a sufficient consideration for the often repeated declaration that he would pay. *Willing* v. *Peters*, 12 *Serg. & Rawle*, 177. The case of *Field's estate* 2 *Rawle*, 351. 8 *Mass.* 127.

The opinion of the court was delivered by

GIBSON, C. J.—A release in consideration of present embarrassment, is necessarily on an implied condition in morals, that advantage be not taken of it, after the embarrassment has ceased. A remission, which has in view an immediate relief from pecuniary pressure and not an ultimate gift of the money, gives no moral right to an extension of the creditor's generosity beyond the object originally contemplated. A release for value or perhaps even pure good will, would extinguish the debt both in honour and conscience, such being the purpose of the creditor at the time; but what has been conceded to a debtor's necessities, may be justly and honorably retracted on the principle of failure of consideration, when he no longer has necessities to be relieved. All that is wanting to that end, is a legal means which the creditor may conscionably use when it is put into his hands by the debtor himself. It seems to me, therefore, the decision in *Willing* v. *Peters* is founded in the plainest principles of reason and justice. On ground less secure in point of reason, seems to rest the morality of the obligation imputed to a debtor who has been discharged by a statute of bankruptcy, as I attempted to show in the case of *Field's Estate*, 2 *Rawle*, 351, without, however, at all questioning the authority of cases in which it has been held to be a sufficient consideration for a promise. The case here depending, as it does, entirely on principle, is of a different stamp. The supposed natural obligation which was made the consideration of the promise, was taken to be an original liability of the defendant's intestate for mismanagement as an executor. Now a trustee is answerable in equity, and consequently in conscience and morality, only for negligence, without which he is not bound to make good a loss suffered by the *cestuy que trust;* and how was the existence of negligence thought to be established? Only by rejudging the judgment of a court of competent jurisdiction directly on the point. The propriety of that seems questionable at the first blush. No one will pretend that an obligor who had thought proper to prom-

M'Pherson's Administration *v.* Rees.

ise payment notwithstanding a verdict in his favour, would be bound in an action on the promise, to show want of consideration, or, in other words, the absence of a moral obligation, by giving proof of actual payment, and thus trying the matter of the former defence all over again. If the plaintiff were not estopped by the verdict from inquiring into the fact, on which the existence of the alleged moral obligation is supposed to depend, a promise to pay would be but an agreement to waive the estoppel, for which, a supposition that the verdict was unjust, would be no consideration, because an obligation to waive the benefit of. it, could arise only from a certainty of the fact; and to permit the parties to go behind the judgment, to ascertain what they had ample opportunity to ascertain before, would be against sound policy, which requires, that a final judgment on full hearing should put a stop to further litigation. That an agreement on sufficient consideration, to waive the advantage of an estoppel will be executed, is not to be denied; but it is an assumption of the whole matter, to say there is a moral obligation and consequently a valid consideration, because it may be unconscionable to insist on the estoppel. That would be the very matter to be tried, after the defendant had been let into the whole benefit of the agreement, by being permitted to reiterate his original demand; and thus the defendant would be subjected without an equivalent, to the hazard and vexation of a second trial. Surely a promise to do that, would be without consideration. Here the defendant's intestate, had stated a separate administration account, and the court below erred in supposing that the question of negligence, and consequently the existence of a consideration, had not been put at rest by the decree of confirmation.

Judgment reversed.